MARVILLE C. WALTERS, administratrix of W. C. WALTERS, deceased, Plaintiff in Error, v. THE PEOPLE, Defendants in Error.

ERROR TO FULTON.

A tract of timber land, a mile distant from the farm or house occupied, yet necessary for fuel, etc., for the use of the farm, is not a part of the "homestead," under the act of 1851.

An absence, by reason of ill health, from the homestead for a year, by the widow, after the death of her husband, without any intention of abandonment, will not deprive her of the benefit of the act.

There is no provision in the act for making up a deficiency in the value of the "homestead," if it is less than one thousand dollars.

It is a question of fact, whether adjoining and contiguous tracts of land forming one compact body, are part of the homestead.

THIS was a cause commenced in the county court of Fulton county, at the March term, A. D. 1855, on petition of Nathan Beadles, setting forth that the administratrix had filed an inventory or account current in the estate of William C. Walters, deceased, setting forth also that the personal estate was exhausted, and that there still remained large amounts against the said estate unliquidated. That he was one of the creditors, and that there was real estate belonging to the estate not yet disposed of, and praying citation against Marville C. Walters, the administratrix, and an order compelling her to apply for a decree to sell the real estate to pay the debts, etc.

Citation issued, service was had, and the administratrix, at a subsequent term of that court, filed her inventory and account current, as prayed in the petition. At a still subsequent term she filed her answer, setting forth these facts, and that she had applied the personal effects in payment of her specific allowance, and the first class debts. And that all the real estate of which the said William C. Walters died seized of, was seventy-two and a half acres, which he occupied during his life as a homestead, and on which he lived at the time of his death; and seventy-two acres of timber land, lying near, but not

adjoining thereto, and used for the purpose of supplying the homestead with wood, timber, etc. That it was necessary to the enjoyment of the homestead.

That she was the widow of the said William C. Walters. That an heir to the said Walters had been born since his decease. That the widow and heir had continued to occupy the said seventy-two and a half acres, homestead, as aforesaid, since the death of the said William C. Walters, except when she went to her father's during the sickness, occasioned by her confinement. That she did not leave the same with the intention of abandoning it, but returned to it as soon as her health would permit, which was in about eleven months after her departure therefrom, and went to receive the care and attention of her friends; and set up claim to the real estate as a homestead, under and by virtue of an act of the legislature of the State of Illinois, entitled "an act to exempt homesteads from sale on execution," approved February 11, 1851, and in force July 4, 1851. And that the demand of the petition was contracted after the 4th day of July, A. D. 1851. That she was entitled to dower out of the said real estate; and that, subject to her right of dower, the real estate was not worth to exceed $1,000, and that she occupied the same as a residence for herself and child.

The petitioner then filed his replication admitting all the facts stated in the answer, except that the absence of the widow from the premises was a mere temporary one, which he denies, and alleges that the same was an abandonment of her right to claim, under the provisions of the act to exempt homesteads from sale on execution; and that the widow left the same with the intention of not returning, and her return was to prevent the sale of the premises to pay debts of the estate, etc.

Upon this, the cause was set down for hearing at the June term, A. D. 1855, of said court. And after hearing of the allegations, proofs, etc., a decree was rendered refusing to grant the prayer of petitioner as to the homestead of the said Walters; and it was furthermore ordered, that the said administratrix petition that court for leave to sell, to pay the debts of said estate, the seventy-two acres of timber land, and that the administratrix pay the costs in course of administration, etc.

From this judgment the petitioner appealed to the circuit court of said county. Proper process issued from the circuit court, and finally, at the February term, A. D. 1856, of that court, the cause was set down for hearing.

Upon the trial of the cause, the petitioner proved that the two pieces of land were about one mile apart, and that the widow had rented the farm to one Myers, sometime in April, 1854, the lease to expire March 1, 1855, without making any

reservation of any part of the house or land, she being on the premises when the same was rented, but not when the tenant took possession. And that she left no furniture there; and that Alexander Freeman acted as the agent of the widow, and came and received the rents, and said he was agent, and talked to the witness about renting to him another year, but never did hear Freeman say he was agent in the widow's presence.

The petitioner then proposed proving, by this witness, what Freeman said; to which the defendant objected, on account of the insufficiency of the proof of agency, which objection was overruled by the court, to which ruling the defendant then excepted. The witness then stated that Freeman said that the widow would rent, provided she could retain the premises without coming back on to them again; and that, to the proper enjoyment of the premises, there ought to be timber with the place.

And that the child was born at her father's, some six or eight miles from the premises, where the widow remained while he occupied the same, but she and the child returned to the farm in March, 1855.

The defendants then proved that Walters lived upon the seventy-two and a half acres, and died there, and was his homestead; that there was no timber land adjoining the homestead; that the seventy-two and a half acres was necessary to the proper enjoyment of the homestead; that the widow of said Walters, the defendant, being unwell, in consequence of her approaching confinement, it was necessary for her to go home to her father's house, where the child was born who was heir to the said Walters by his marriage with defendant; that she got well and went back to the homestead in March, 1855, as soon as the tenant to whom she had rented left.

Upon cross-examination, witness stated that he was renting the farm; that the widow occupied one room in the house and furnished it, and used it as a residence for herself and child; that she kept her things there, and had for sometime previous to the trial; that her health was very poor for two or three months after her child was born. Witness pays her one-third of the produce raised as rent for the farm, and that this arrangement was made because she wished to hold the premises, and for no other reason.

The defendant then called Alexander Freeman, who testified that the physician, at the decease of Walters, stated that it was necessary that the widow should have careful attention. In consequence thereof she rented out the place, and went to witness' house in March, 1854, and the child was born June

20th of that year, and she remained unwell three or four months after her delivery, and was obliged to keep her bed a considerable portion of the time before her confinement, after she went to her father's. It was thought unsafe, in her condition, for her to stay alone on the place. This was the reason why she went to her father's.

She had a garden on the homestead in 1855, and rented the rest; remaining on the premises part of the time during that year, and kept her things there.

At the May term, 1856, of that court, the court rendered a decree ordering the administratrix to apply to the proper tribunal for leave to sell both pieces of land for the payment of the debts of the estate by a given day, etc. The defendant now prosecutes a writ of error to this court, and assigns the following causes for error:

1st. That the circuit court erred in allowing the statements of Freeman with the existing proof of agency.

2d. That the court erred in decreeing that the seventy-two and a half acres was subject to the payment of the debts of the estate.

3d. That the court erred in ordering the administratrix to apply for the sale of any of the land for the payment of the debts of the estate.

Ross and Shope and O. H. Browning, for Plaintiff in Error.

Goudy and Judd, for Defendants in Error.

Scates, C. J.   Two questions arise, whether a tract of timber, a mile from the farm land, and not adjoining, yet from which supplies of timber, rails, firewood, etc., were alone derived for the support of the farm, can be treated as part of the homestead under the act of 1851, where both tracts do not exceed the amount fixed in the act; and whether the widow, having leased the farm and dwelling for a year after the death of her husband, and resided six or eight miles from it, with her father, until her recovery from a confinement, thereby lost her homestead rights, by abandonment, though she did not intend to abandon the premises as a homestead when she left.

The language of the act seems to contemplate but one piece of land. The exemption is confined to " the lot of ground and the buildings thereon, occupied as a residence, and owned by the debtor, being a householder; and having a family, to the value of one thousand dollars." Acts of 1851, p. 25, Sec. 1.

There is no provision in this act to make up the value of the homestead to one thousand dollars, by other property, when it

falls short in value. Under the act in relation to judgments and executions (Rev. Stat. of 1845, p. 306, Sec. 33), certain values are exempted, and debtor may select property to the value of sixty dollars, and it may be for the fuel and provisions for the family for three months and for the stock. But this homestead act contains no provision to make up a deficiency in the value of the homestead below one thousand dollars, nor is there any intimation of such an intention in any provision of the act. The contrary is strongly inferable from the act, for the exemption is "to the value of one thousand dollars" in the "lot of ground and the buildings thereon, occupied as a residence."

In the event of the lot and buildings exceeding that value, provision is made to divide the premises, if divisible, leaving the dwelling and so much of the lot as, together, are worth one thousand dollars—but if indivisible, then for a sale of the whole—and for the payment of one thousand dollars to the debtor, which is exempted from levy and sale, for one year. Acts of 1851, p. 26, Secs. 3, 4 and 5. The protection for one year may enable the debtor to reinvest the amount in another homestead. Two or more adjoining lots might be occupied, and used as one lot, for a homestead, and might be so essentially so as to be indivisible. I am not able, however, to construe the act as including distinct and separate lots or tracts, not adjoining or contiguous, not even for the purpose of securing so essential an article as fuel. I am, therefore, of opinion that the timber tract in this case cannot be claimed and exempted as a part of "the lot of ground" upon which the dwellings and homestead exist. The objects and provisions of the act are much more circumscribed than the "act to define the extent of possession in cases of settlement on the public lands," under which the case of *Gleason et al.* v. *Edmunds,* 2 Scam. R. 448, was decided. There, the court gave great latitude to the settler to include more or less land within the boundaries of his settlement claim. But here, it is confined to the "lot of ground" occupied by the dwellings and home, or actual residence of the housekeeper. This lot of ground may be but a few feet square, while the debtor owns thousands of acres, in many other tracts. It may again contain thousands of acres in one compact body, embracing many surveys or legal subdivisions. It is, doubtless, a question of fact, whether particular adjoining and contiguous tracts, forming one compact body, is or not parcel of the homestead. So might separate, disconnected parcels, fall under the more general idea of parcel of the homestead place. But I conceive the intention of the legislature in confining the exemption to "the lot of ground" containing the dwellings and residence,

designedly narrowed the protection to less than would be included in the more comprehensive terms of the "homestead," as known under the dower act, and in general parlance.

The exemption of personal property from sale under execution, gives absolute ownership of the property to the debtor, while covered by that protection, and he may sell or mortgage the same without losing that protection either to himself or mortgagee. *Vaughn* v. *Thompson*, 17 Ill. R. 78. See also *Cook* v. *Scott*, 1 Gil. R. 333 ; *McCluskey* v. *McNeely*, 3 ibid. 578 ; *Cassell* v. *Williams*, 12 Ill. R. 387.

Whatever may be the effect of the act under consideration, in this view, with respect to the debtor himself—which I do not propose to discuss or decide here—though the act would seem to contemplate occupancy as a residence, yet the estate preserved to the widow and children is, until the youngest arrives of age, which may be, in case of a posthumous birth, twenty-one years and nine months, and in case of the widow surviving the nonage of the youngest child, she has a life estate. Thus upon the contingency of thus surviving, a freehold is created in the widow. But all, unquestionably, take upon condition of continuing occupancy by "some or one" of them, widow or child. It is contended here that the homestead was abandoned and lost, by the widow having rented out the premises for some ten months, during which time she resided with her father, some six or eight miles distant, where her bad health and approaching confinement required her to find that attention and care, that she could not obtain by remaining in the dwelling house of the homestead. What is the meaning of "occupy," or "continuing to occupy," within the intention of the legislature? In common parlance and in reference to housekeeping, we at once attach the idea of actual residence, dwelling, abiding on, the place of bed, board and washing, three acts of constant recurrence, to supply the necessaries of life and renew the physical man. This is the second sense given it by Webster, but it is used also in the sense of possess, generally, and Webster also uses the word possess, in the same variety of senses in the main as is given to occupy or occupancy. Turn to 2 Bouvier's Law Dict. 240, " occupancy;" 336, "possession," and we find the words used and understood in the same great variety of senses. If a man go abroad, *animo revertendi*, and reside for temporary purposes of trade or other business, he will not lose his domicil; and yet we know that the party's domicil follows his actual residence. So it is with foreign ministers and diplomatic agents. In contemplation of law, they continue to occupy their mansions or dwellings in their own country, though actually resident abroad for years. A person may have a constructive

possession or occupancy, and he may have a *possessio pedis* by tenants, or actual enclosures, and in contemplation and within the meaning of law, he may have *actual* possession, actual occupation, without residence. Such is the difference between the statutes of limitation of 1835 and 1839. The object of a temporary absence here was the preservation of health, it may be also of life. The farm is made productive in the meantime, by renting, thus contributing to the end designed in a homestead—the support, in part, of the family. There was no intention of abandonment, as a constant anxiety was shown and expressed to do nothing to lose the right to the homestead, as such. We shall put no such harsh and narrow construction upon the language and intention of the legislature, as to take away the estate, when it becomes impolitic, or impracticable to continue to occupy by actual residence for a season—the possession—the occupation being preserved for the benefit of the family in the meantime, by a tenant, or by the storage of the household furniture, etc., until the family can return. The best intention of the legislature will, doubtless, be promoted, by allowing that continuing occupation of some of the family in the form and upon the terms best calculated to aid them in providing for their wants, whether by themselves or by their tenants. For it may be, at times, that food and clothing are paramount wants to shelter. At least for the purposes of this case, we find no forfeiture or abandonment, in the acts of the widow in proof here.

Decree reversed, and cause remanded to enter decree to apply for order of sale of the timbered tract only.

· *Decree reversed.*