## JAMES W. SHEPHERD v. MARGARET CASSIDAY.

If we admit that an old homestead may, in opposition to the rule with regard to the change of domicil, be abandoned before the acquisition of a new one, it can only be on the most clear and conclusive facts of abandonment of the homestead, with an intention not to return.

We do not intend to assert the proposition, that the old homestead remains until a new one is gained. This would, perhaps, too much embarrass and obscure the condition and rights of property, to receive judicial sanction; there being no law or statute to that effect.

Mere absence from the homestead, or leasing it for a greater or less period of time, will not subject it to forced sale; nothing short of a total relinquishment or abandonment with the intention not again to claim it as a homestead, will have such effect.

It would seem that where a party has abandoned certain property as his homestead, he may resume it at any time before an opposing right by sale has

Shepherd v. Cassiday.

vested in another party; but such right cannot be exercised fraudulently, with a view to hinder and delay or defraud creditors.

It would seem that, in order to render property which has been occupied as a homestead, liable to forced sale, it is not enough that the owner has left it without the intention of returning, but it is necessary further, that he shall have become domiciliated elsewhere.

Quere, as to the equities between a claimant of homestead exemption, and a purchaser without notice?

Appeal from Bastrop. Tried below before the Hon. Thomas H. DuVal.

Suit by appellee against appellant, commenced January 17th, 1856, to recover a house and lot in the town of Bastrop, which she alleged to be her homestead. Answer that defendant became the owner of the premises by purchase at Sheriff's sale under execution against the plaintiff, and that at the time of said sale, plaintiff had abandoned and ceased to claim the property as her homestead.

Stephen Cassiday, a son of the plaintiff, testified that the premises in controversy were the only real property owned by the plaintiff at the time of the Sheriff's sale or since; that plaintiff had moved to Austin to be with her children, and that she said she intended returning to Bastrop; she went to Austin some time in March, 1855; witness did not know when she intended to return; she is still living at Austin, with her children; she rented the premises to Mr. Teal up to January 1st, 1856; witness had questioned a lawyer to know how plaintiff should act to keep her homestead from being liable to an execution. Another witness proved that the property was worth $500, and ought to rent for $3 or $4 per month.

Defendant gave in evidence the judgment, (which was in favor of C. C. & A. D. McGinnis,) execution and deed, under which he claimed. The sale was made on the first Tuesday in October, 1855. He proved by Teal, that plaintiff was residing on the premises when he, Teal, rented them from her; that she gave as a reason for renting, that she wished to move to Austin; she stated that she was dissatisfied in Bastrop, and proposed to sell witness her place, but did not say that she would or would not return to Bastrop to live; she said she wished to go to Austin in order to be with her children; but that if her son did not get her as good a place as her own, she would not stay with him; this last she said in a jesting manner to her son. She did not say that she would or would not return to Bastrop.

Another witness for defendant testified that he went with Mr. C. C. McGinnis to witness a note from the plaintiff to C. C. & A. D. McGinnis; heard her tell McGinnis that she intended moving to Austin, that she wanted to live with her children, and that she would not live in such a place as Bastrop, that she despised the people and would not stay amongst them.

C. C. McGinnis testified that a short time previous to plaintiff's moving to Austin, he went to see her to get her note for what she was owing the firm of ·C. C. & A. D. McGinnis, that the plaintiff then and there stated to him that she intended moving to Austin to be with her children, that society was bad in Bastrop, and that she would not live in any such place. This witness stated that the plaintiff's statements to him caused him to have her house and lot sold under the execution, and that plaintiff was in a very bad humor at the time she had said conversation with witness.

Another witness for defendant stated that the plaintiff told him that it was her intention to move to Austin, that she would not live any longer in Bastrop. This was all the evidence.

The Court charged the jury, without request, as follows :—

In order to enable the jury to render a correct verdict in this case, they must ascertain, from the testimony, whether or not the property in dispute was the homestead of the plaintiff at the time the same was sold under execution. If it was, and she left Bastrop with the intention of abandoning the property in question, as a homestead, and in pursuance of such intention has taken up her residence in the city of Austin, and become domiciliated there, then the property would not be protected from forced sale under execution, and in such event you will find for the defendant.

But if you believe, from the testimony, that the property in question was the plaintiff's homestead at the time of her removal to Austin, and that she left the same temporarily and with the intention of returning, then the sale of the same was illegal and void, and you will find for the plaintiff.

The question of intent is one of fact for the jury to determine; and to do so, they must look to all the facts and circumstances in evidence before them.

It is the object and intention of our Constitution and laws, to protect and secure the homestead of families from forced sale ; and to authorize the jury to find a verdict for the defendant in this case, they should be clearly satisfied, from the testimony,

that the plaintiff abandoned the property as her homestead; left it without the intention of returning, and that she had been domiciliated elsewhere.

The following instructions were asked by the plaintiff, and all given except the third:—

1st. That if the lot or parcel of land in controversy was the homestead of the plaintiff at the time of the sale set up by the defendant, under execution from the Justice's Court, that sale was a nullity, and passed no title whatever to the purchaser, and you will find for the plaintiff.

2d. That an abandonment of the homestead for an indefinite time, with a present intention of returning at some future day, is not such an abandonment as would render the property subject to forced sale.

3d. That to render premises that had been occupied and held as a homestead, subject to forced sale, the head of the family must have both ceased to reside at such former place of residence, and have acquired a homestead at some other place.

4th. That the fact of the head of the family renting out the homestead, and for the time being living elsewhere, does not render the homestead subject to forced sale, unless another homestead has been acquired.

5th. The homestead is the place held and provided by the head of the family for the home of the family, whether the family be actually domiciliated there or temporarily absent.

The following instructions were asked by defendant, and refused:—

1st. That if the jury believe that the plaintiff removed from the lot in controversy to the city of Austin, with the intention not to return and live upon said lot, it ceased to be her homestead.

2d. That if the jury believe from the evidence, that the plaintiff abandoned the lot in controversy, and moved off, with the intention never to live again in the town of Bastrop, she, by that act, lost the right to the lot in controversy as her homestead, and they will find for the defendant.

Verdict and judgment for plaintiff; motion for new trial overruled, &c.

*C. C. & A. D. McGinnis*, for appellant. From all the facts embodied in the record in this case, it does seem beyond question

that it was the general opinion and understanding of the people of Bastrop, when the sale of this property took place, that Mrs. Cassiday did not claim this property as her homestead, and did not intend to occupy it any longer.

We think it hard and contrary to the rules of equity and good conscience, for Mrs. Cassiday to actually move off, declaring she had determined to quit her place forever, and thereby induce her creditors to levy upon her former homestead, and induce an innocent man without notice to purchase it; and so soon as the purchase is made and the claim against her discharged, institute suit against the innocent purchaser, and claim the property, without offering to pay back the amount of the purchase money; but by simply proving by her son (who on the witness stand acknowledged he had been consulting lawyers to know how to recover back his mother's house and lot) that she had told him she intended to return and live on the property, recover back the property and leave the poor duped purchaser to whistle for his money, or wait until she makes property, exempt from execution, out of which he may make the money.

We do not wish the Court to understand that we question the legality of the charges given by the Court to the jury; but we do most respectfully insist, that the charges of the Court misled the jury, and that the Court erred in not giving the charges asked by Shepherd's counsel. We have no hesitancy in saying, we would have gained the case in the Court below, but for the refusing by the Court of the charges asked by us to be given to the jury.

*Campbell & Smith*, for appellee, cited Story, Conf. L. Sec. 44; 6 Tex. R. 102; 8 Id. 312. The charges asked by defendant had already been substantially given in the general charge.

HEMPHILL, CH. J. The object of the present suit is to recover a lot of land in the town of Bastrop, claimed by the plaintiff, Margaret Cassiday, as her homestead; and damages for its detention. The defendant, James W. Shepherd, claims that the plaintiff had abandoned her homestead, and that he purchased the lot at Sheriff's sale.

The plaintiff left Bastrop on or about April, 1855, and the lot was sold in October of the same year, the plaintiff in the mean time living with her children in Austin, where she has ever since

continued to live; but has acquired no homestead. There was proof of declarations of her intentions as to retaining or abandoning her homestead. The judgment was for the plaintiff, and the defendant appealed.

The question of abandonment of homestead, or by what acts and circumstances a person who has a homestead forfeits his right to the exemption before or without acquiring a new homestead, presents great difficulty in its adjudication. The rules in relation to domicil, the abandonment of the old and the acquisition of a new domicil, are not (if it be admitted that mere abandonment will forfeit the homestead right) altogether applicable. For it is a maxim that every man must have a domicil somewhere, and also that he can have but one; that his existing domicil continues until he can acquire another; and that by acquiring a new domicil he relinquishes his former one. The more correct principle, says Judge Story, is, that the original domicil is not gone until a new one is actually acquired *facto et animo*. (Story, Conflict of Laws, § 47; 10 Pick. 77; Thorndike v. City of Boston, 1 Met. 242; Sears v. City of Boston, Id. 250.)

If we admit that an old homestead may, in opposition to this rule with regard to the change of domicil, be abandoned before the acquisition of a new one, it can only be on the most clear and conclusive facts of abandonment of the homestead, with an intention not to return. An old domicil cannot be forfeited without conclusive proof that a new one has been acquired. If an old homestead can be lost, without proof that a new one has been gained, certainly the circumstances to show abandonment must be most clear and decisive.

We do not intend to assert the proposition, that the old homestead remains until a new one is gained. This would perhaps too much embarrass and obscure the condition and rights of property, to receive judicial sanction; there being no law or statute to that effect. But while this is admitted, we must remember the wise and beneficent purposes of the homestead exemption; that it was intended to secure the peace, repose, independence, and subsistence of citizens and families; that it was placed beyond the reach of creditors, an asylum upon which they might gaze, but which they could neither enter nor disturb; a right so strongly secured, founded upon such high public policy, cannot be lost by the mere absence of the party or family intended to be benefited. The homestead is not to be regarded as a species of prison bounds, which the owner cannot pass over without pains

and penalties. His necessities or circumstances may frequently require him to leave his homestead for a greater or less period of time. He may leave on visits of business or pleasure; for the education of his children; or to acquire in some more favorable location, means to improve his homestead; or for the subsistence of his family; or he may intend to abandon, provided he can sell. But let him leave for what purpose he may, or be his intentions what they may, provided they are not those of total relinquishment or abandonment, his right to the exemption cannot be regarded as forfeited. And if he did intend on leaving to abandon, this may be changed by him, up to the time that he acquires a new homestead. He may show this change by the resumption of his residence; or it may be made known in other modes; and however it may be made known or ascertained, it will be effectual to protect his rights; for if the place be in fact his homestead, it cannot be exposed to forced sale. Frauds will not be permitted; but the right to the homestead cannot be forfeited unless by a party's showing a continuous abandonment up to the time that some opposing right by sale has vested legally in other parties.

The law of the case was fully expounded to the jury. There was no error in the charge, at least none of which the appellant could complain. We are satisfied with the finding of the jury. They were acquainted with the parties, and were the judges of the weight to be given to the petulant observations of this old lady, made, some of them at least, when she was in very bad humor. They found, and we think properly, that she had not abandoned her homestead; and the judgment is affirmed.

Judgment affirmed.