FYFFE v. BEERS *et al.*

1. **Homestead:** ABANDONMENT. An actual removal from the homestead with no intention to return will waive or forfeit the right as against purchasers or creditors, even though no new homestead may be gained.

2. —— TEMPORARY REMOVAL. If, the removal however, is but temporary and the *animus revertendi* is established, and third persons have not been led to believe that it was not a homestead by the owner out of possession, and to act upon this belief by purchasing or specifically altering their condi-

tion upon the faith that it was not exempt as a homestead, the law will treat the homestead right as still subsisting.

3. —— APPLICATION OF RULES. The application of these general rules must be determined by the peculiar facts in each case.

4. —— TIME OF ACQUISITION. Where the owner of a homestead took possession of an adjoining tract of land, under a parol contract of purchase, and improved the same as a part of the homestead, it was held exempt from judicial sale to satisfy a debt contracted after such purchase but before an actual conveyance of the property to the debtor.

*Appeal from Johnson District Court.*

THURSDAY, DECEMBER 15.

PETITION TO RESTRAIN SALE OF HOMESTEAD ON EXECUTION. — The plaintiff, by this proceeding, seeks to enjoin the sale on execution of certain premises which she claims as her homestead. The facts are concisely these: In April, 1856, one John Crummey, the father of the plaintiff, purchased for her and her lame daughter a tract of land in the vicinity of Iowa City, containing about two acres, and caused the same to be conveyed to them — Mary S. and Sarah E. Fyffe. On the premises thus purchased was a dwelling house not finished, but sufficiently so to allow of its being occupied in the summer time as a residence. The object of Mr. Crummey, in making the purchase, was to secure to his daughter (the plaintiff) a home. Accordingly, in June, 1856, the plaintiff, with her husband and family, moved on to the premises, as their home, and resided there until October of the same year, when they removed, temporarily, as the plaintiff claims, and with no intention to abandon their homestead, to Iowa City, to engage in the business of inn-keeping. During the time they lived on the premises they finished the residence, put up some out-buildings, fenced and otherwise improved their property. The plaintiff continued to improve the place after she left, and while she was residing in the city. *During*

*the time they lived on the premises*, the plaintiff made a verbal contract for the purchase of about three acres of land adjoining the tract above mentioned, with a view of enlarging the homestead grounds.

This contract was not reduced to writing, or any money paid upon it until May, 1857, when $500 were paid, and a bond for a deed was received. On the very next day thereafter, the plaintiff commenced to remove the division fence between the two tracts, throwing the two into one field, breaking up and fencing the tract last purchased, setting out trees, etc. The purchase price of this last tract, as appears by the deed, was $1,100, but the plaintiff obtained no deed therefor, and had no evidence of title on record till November 27th, 1857. Prior to this time, and *after* the removal of the plaintiff from the premises in controversy, and while she was living as a tenant in the hotel she was keeping in Iowa City, viz.: on the 18th day of September, 1857, she agreed to purchase from the defendant Harriet Beers, a house and lot in Iowa City, receiving a *title bond* and executing her notes to the said Harriet, for the purchase money or the greater portion thereof. The plaintiff failed to pay these notes, and at the June Term, 1861, judgment in foreclosure was rendered against her in favor of the said Beers, for $3,038.88, and a general exe-. cution ordered for any balance remaining due after selling the property under the special execution. This balance was about $1,600, and in November, 1861, general execu-. tion issued and was levied upon the premises now claimed. by the plaintiff as a homestead, and the sale was advertised to take place in January, 1862. In December, 1861, before the time fixed for the sale, the plaintiff and her family removed back to the premises and filed this petition to enjoin the sale by the sheriff, on the ground that the property was her homestead, had never been abandoned, and was. therefore exempt from forced sale. A temporary injunc-

tion was allowed. Testimony was taken, and on the final hearing the injunction was made perpetual. Defendants (Beers and the sheriff) appeal. The other material facts will appear in the opinion.

*Edmonds & Ransom* for the appellant.

*Fairall & Boal* and *W. E. Miller* for the appellees.

DILLON, J. — I. That the tract of two acres purchased by the plaintiff's father, and conveyed to the plaintiff and her daughter, became impressed with the homestead character by actual residence thereon in June, 1856, and that it remained so impressed until removal therefrom in October, 1856, is a clear proposition, and one which is not controverted by the creditor's attorney. The questions relating to the contiguous tract of about three acres, which the plaintiff annexed to the homestead, we will consider hereafter. And the question is, was the homestead thus acquired and perfected, lost or forfeited, so as to render the premises liable in November, 1861, to levy and sale on the execution of the defendant Beers?

It was not lost or terminated by the acquisition of a new homestead, for during the plaintiff's absence she lived on rented property, and acquired elsewhere no new home, no property to which the homestead exemption would attach. The attorneys of the creditor claim that it was forfeited by *abandonment.* The proposition is not disputed that the homestead right may be thus lost. It is difficult and dangerous, on this subject, to lay down general rules which will apply to all cases. This may, perhaps, be safely asserted, that actual removal from the homestead with no intention to return, will waive or forfeit the right as against purchasers or creditors, even though no new homestead may be gained.

The difficulty arises in cases where the removal is actual, but where there is claimed to exist the intention to return **2. ——** **temporary removal.** and resume possession of the premises as a home. And here the difficulty is chiefly one of fact, rather than of law. For if the removal is temporary, and the *animus revertendi* is established, and third persons have not been led to believe it was not a homestead, by the owner thus out of possession, and to act 'upon this belief by purchasing or specifically altering their condition upon the faith that it was not exempt as a homestead, the law would treat the homestead right as still subsisting.

For such cases no general rule can be enunciated ; each turns upon, and the decision of each exacts a special regard **3. ——** **application of general rules.** to its own peculiar facts. How long an absence will forfeit the right, depends upon circumstances. If a man, for example, should lock up his homestead, or even rent it, and go to Europe on a tour of pleasure or for any other temporary purpose, clearly intending to return and resume possession of the homestead, it seems clear that even five years absence would not, certainly as respects *general* creditors, work a forfeiture of the homestead right. *Walters* v. *The People*, 18 Ill., 194 ; *S. C.*, 21 Id., 178 ; *Guiod* v. *Guiod*, 14 Cal., 506. Prolonged absence would ordinarily justify the conclusion of abandonment ; but this may be rebutted and explained, especially where third persons have not been actually misled. (1 Am. L. Reg. [N. S.], 712, and cases there cited.) In the case at bar, the absence from the premises claimed as a homestead, was, from October, 1856, to December, 1861, over five years.

Has this been explained so as fully to overcome the presumption of abandonment, naturally arising from an absence so protracted ? That is the question upon which the case wholly turns. It is a close one, but upon the whole evidence, and on all of the circumstances, we think

the plaintiff entitled to relief. We proceed briefly to state the reasons which led us to this result. Unlike *Frawick* v. *Harris*, 8 Texas, 312, there was no voluntary removal to and domiciliation in *another State*. Unlike *Davis* v. *Andrews*, 30 Verm., 678, the creditor here is not the *bona fide grantee* of one of the parties, parting with money or property in ignorance of the homestead right, and upon the strength and faith of a specific conveyance to him. On the contrary, upon the doctrine of *Jones* v. *Crosthwaite*, 17 Iowa, 393; *Patton* v. *Kinsman*, Id., 428; and *Johnson Co.* v. *Rugg*, *infra*, it is, to say the least, very questionable whether the defendant Beers was entitled to a *personal judgment* and a *general* execution against the plaintiff. If not thus entitled, she cannot be said to have extended credit on the faith of being able to subject the plaintiff's *separate* property to liability to pay any portion of her debt, which might not be made out of the property on which she retained a specific security. And, in point of fact, we are satisfied that the defendant Beers relied, for her security, wholly upon the title which she retained, and not upon the plaintiff's other or general property. The following are, in outline, the reasons which lead us to the conclusion that the plaintiff did not intend to abandon her homestead in the premises in controversy, but on the contrary, intended to resume their possession as her home, and that of the family:

1st. She actually acquired no other home. Her statement to the agent of the defendant at the time she bought the lot in Iowa City, that "she regretted having sold it, and wished to repurchase it as a home," is by no means conclusive that such was really her intention, and is not inconsistent with the notion that this purchase was, as Mr. Fyffe testifies, made "upon speculation."

2d. It is clearly shown by the testimony that, during her whole absence, the plaintiff and her family always

spoke of the property in controversy as their home, and of their intention to return to it, and this *before* as well as after the creation of the debt to the defendant, and when there would be no motive to misrepresent.

3d. What is more important, the plaintiff's *acts* confirm and fortify the declarations of herself and of the family. Thus she left a considerable portion of her furniture in the house, and it remained there during the whole time the plaintiff was absent. So after the removal, a large number of trees and shrubbery were, from time to time (during *every* season, says one witness), set out with a view to beautify and improve the place for a home, and other kinds of work were done, "such as are usual in fixing up and making a home." Again, it was not rented to tenants, as houses generally are which are owned and kept for rent or profit. Thus, Mr. Fairall occupied it one season as a "special favor," paying only taxes and insurance. Afterwards H. Harrington occupied it to take care of it, paying one-third of the products of the garden. The rest of the time, before plaintiff resumed possession, it was occupied by Shafer and his family, while he was employed by the plaintiff as a hired hand at the hotel in Iowa City.

4th. Advantageous offers to purchase or exchange it were refused by the plaintiff, because it was her home.

When the absence is so prolonged as in this case, the court is of opinion that the intention to return to the premises as a home, should be clear and unmistakable; but we believe this has been made to appear. These circumstances clearly distinguish this case from that of *Davis, Moody & Co.* v. *Kelly,* 14 Iowa, 523; and satisfy us that the plaintiff never did, in fact, relinquish the intention to resume the possession of the premises in dispute as her home. We would not give a construction to the statute that would sanction frauds upon creditors.

If the intention to abandon existed, we would not allow it to be resumed, to the prejudice of intervening rights. But the law does not make the homestead a prison in such a sense that the owner cannot leave it for temporary purposes without a forfeiture of the exemption. In this case the absence was designed to be temporary, for the purpose of supporting the family, and to acquire means to improve the homestead and "make it comfortable." The design to return was never relinquished. Such an absence will not waive the right as to general judgment creditors, or creditors at large, and further than this, we are not called upon to decide. Fully supporting these views, and the conclusions reached, see *Shepherd* v. *Cassidy*, 20 Texas, 24, and remarks of HEMPHILL, Ch. J.; *Gonhenant* v. *Cockrell*, Id., 94; *Taylor* v. *Boulware*, 17 Texas, 74; *Walters* v. *The People*, 18 Ill. 194; *S. C.*, 21 Id., 178; *Franklin* v. *Coffee*, 18 Texas, 413, 417. And as to the rights of judgment creditors, *Welton* v. *Tizzard*, 15 Iowa, 495; and *Vannice* v. *Berger*, 16 Id., 555.

II. Under the circumstances of the case (see statement) 4. —— we think three acres are likewise exempt as part time of acquisition. and portion of the homestead. This adjoined the other, and was purchased for the purpose of making it part of the homestead. This purchase was made by *verbal contract during the time* the plaintiff was in *actual* possession of the two acres; and it was *completed* and *possession actually taken, and improvements made thereon before* the debt to the defendant was created. Being thus annexed and improved prior to the time the plaintiff's debt was in existence, and the defendant not having (as we have seen) been misled into parting with money or property upon the faith and belief that this property was or would be liable to her, we are of opinion that it should justly be considered and treated, as respects the defendant, as an integrant part of the homestead premises and equally with the other tract

exempt from sale under the execution. Under our statute the homestead may consist of different tracts if contiguous, or if they are habitually and in good faith used as part of the homestead. Rev., § 2283.

Affirmed.