P. M. OLIVER, APPELLANT, VS. P. G. SNOWDEN, APPELLEE.

1. A homestead of a person who is the head of a family residing in this State, within the meaning of the exemption clauses of the Constitution and the statutes, is the place of actual residence of the party and his family.

2. A party residing in an incorporated town or city with his family, and owning land several miles from the town, cannot claim the latter as exempt from forced sale as a homestead, it having never been occupied by him as a residence.

3. Filing a declaration or claim of homestead under the law of 1869 does not exempt the property so claimed, unless it be actually occupied as a home.

Appeal from the Circuit Court for Alachua county.

Peter G. Snowden, on the 26th of November, 1880, recovered a judgment at law in the Circuit Court of Alachua county against Peter M. Oliver, and had a *fi. fa.* issued therefrom. On December 2d, 1880, Oliver filed in the County Judge's office of Alachua county a schedule of his real estate that he desired and claimed to be exempted as his homestead, embracing therein the land levied upon un-

der the above execution, embracing 21 acres of land situated in the county.

Execution from the above judgment was levied by the sheriff upon these lands thus set part by the defendant in execution (Oliver), and the land advertised for sale thereunder.

Appellant then filed his bill in equity against Snowden and the sheriff to restrain the sale of this property, alleging in said bill that he was the " *head of a family,*" and that he was " *a resident of the State of Florida,*" and that he had this property so levied on set apart as his homestead, &c. An injunction was granted restraining the sale on February 5th, 1881.

The plaintiff in execution, P. G. Snowden, filed his answer to this bill ; in which answer it is not denied that the complainant (Oliver) is " *the head of a family,*" nor that he with his family are " *residents of Florida ;*" but the answer seeks to defeat and avoid the exemption of this property upon the grounds : 1st. That neither Oliver nor his family " reside upon " either of the parcels of land sought to be exempted, and that he has " no dwelling thereon;" and, 2d, because the 21 acres sought to be exempted are composed of three (3) different parcels of land, one of which " is detached " from the other two parcels that adjoin each other.

That the whole amount of land sought to be exempted contains only twenty-one acres, lying all of it in the county, is also not denied by the answer.

After the filing of this answer the counsel for the respecive parties entered into a written agreement to the effect that the cause should be submitted and heard by the court upon the bill and answer, and upon an agreed statement of facts as follows :

First. That Snowden obtained his judgment and execution as is stated in the answer to the bill, and that the execution was levied on the land as stated in the answer.

Second. That complainant in the bill, P. M. Oliver, nor his family, have ever resided upon either of the tracts levied on, but have resided in the town of Gainesville on a lot not yet paid for, but which, when paid for, is to become the separate estate of Mrs. Oliver, P. M. Oliver's wife. (There is nothing in the agreed statement of facts, or in any of the pleadings, that shows any otherwise than that Mrs. Oliver is paying or to pay for this lot in town *bona fide* with her own money.)

Third. That P. M. Oliver's occupation is that of merchant, real estate agent and auctioneer; and that he also "cultivates" all of the three parcels of land sought to be exempted by him, raising thereon vegetables, fruits and other products for market.

Fourth. That all three of said parcels of land are outside of and not contiguous to any incorporated town or city; and that one of the three tracts of land is detached from and about three miles off from the two first tracts that adjoin each other.

Fifth. That on the first mentioned tract there is a one-story house of two rooms that has been occupied by a tenant and field laborer of Oliver's.

Upon the above-agreed statement of facts, and upon the bill and answer, the parties went to a final hearing before the Circuit Judge on the 18th of July, 1881, when a final decree was rendered by the court dissolving the injunction and dismissing the bill, and adjudging that the land levied on could not be exempted or set apart as a homestead under the Constitution and laws of Florida, upon the ground, as is set forth in the decree of the court, that Oliver nor his family have ever resided upon or dwelt upon the lands sought to be exempted.

From this decree the complainant in said bill, P. M. Oliver, takes his appeal to this court.

*Taylor & Sanchez* for Appellant.

It may be proper in the outset of the argument to call the attention of the court to the fact that no where in any of the papers or proceedings in this cause is it pretended that the judgment of Snowden sought to be enforced here was for purchase-money or for house, field or other labor or improvements put or performed upon the lands claimed to be exempted.

It is contended by the appellee that the appellant is not entitled to have these parcels of land exempted from forced sale as a homestead, because they are detached from each other and do not form a compact body.

That a homestead, when in a city or town, need not be in a compact body, but may be intersected by streets, highways, alleys, &c., see Gregg vs. Bostwick, 33 Cal., 227 ; Moore vs. Whittis, 30 Tex., 440 ; Hubbell vs. Cannady, 53 Ill., 427 ; Sterns vs. Hollingsworth, 74 Ill., 206.

And that country homesteads can be in separate tracts, situated apart from each other, see Maho vs. Cotton, 69 N. C., 289 ; Martin vs. Hughes, 67 N. C., 293 ; Williams vs. Hall, 33 Tex., 212 ; 62 Mo., 598. In the States of Wisconsin : (15 Wis., 635 ;) Illinois : (18 Ill., 194 ;) Vermont : (28 Vt., 672 ; 36 Vt., 269 ;) Iowa : (36 Iowa, 394 ;) and Minnesota : (15 Minn., 116,) it has been held that a homestead cannot be in disconnected tracts, but must be in one body.

But upon an inspection of the homestead laws of these States they will all be found to differ materially from our own. The decisions of their courts appear to be based upon that particular provision in their laws which, in express terms, requires a *residence upon* the exempted tract, and as a man can have a domicile or residence on only one tract lying immediately around his house, and not have his house scattered all over three or four disconnected tracts,

seems to be the reason for their holding that the tracts of land exempted must be in one body. In Wisconsin the law provides that the property exempted must be *occupied* by the owner. (Revised Statutes of Wis. of 1878, p. 783, Sec. 2983.) In Illinois the exemption is restricted and confined to the " lot of ground and buildings thereon *occupied* as a residence," and is further restricted to a value of $1,000. (Statutes of Ill. of 1858, Vol. 1, p. 576.) In Vermont the law expressly provides for the exemption only of the "*dwelling-house* and the land *connected* therewith." (Gen'l Stat. of Vt. of 1863, p. 456.) In Iowa the law provides that " the exemption *must* embrace the house used as a home," and provides for the taking of " one parcel only," unless its *value* is less than $500, when it may be extended to more than one tract. (Code of Iowa of 1873, p. 366, Secs. 1994, 5, 6.) In Minnesota the law expressly restricts the exemption to the " dwelling-house tract," and further provides expressly that the creditor may insist on its being " in compact form." Statutes of Minnesota, Revision of 1866, p. 498, Secs. 1 and 4, and Revision of 1878, p. 767, Secs. 1 and 4.

So far as appellant's counsel have been able to discover, in all of those States where *residence upon the tract* has been held by their courts to be an essential element to entitle the party to an exemption, it will be found that the statutes or constitutions of those States expressly limit and confine the exemption to the " *tract resided upon*." And for the same reason it is held that only a single tract of compact form can be exempted.

Our Constitution has no conditions, limitations or restrictions attached to its exempting clause such as " the tract upon which he resides," or the " tract occupied as a home by the owner," or " the dwelling-house tract," or that it shall " embrace the house used as a home," &c.

The only conditions being, 1st, that he is the head of a family; 2d, and a resident of (not upon the tract but) *Florida.*

Thus entitling any and every poor resident of the "*State*" to this humane reservation of a sufficiency of land upon which, or from which, he can make a living, or from which he can get a start in the world. Neither does our Constitution place any such restrictions or conditions upon the right as "that the land exempted shall be contiguous and in one solid body." Neither has our Constitution any reference to or limitation as to the "*value*" of the tract exempted. Its language is unmistakably plain and mandatory, and its only mandate is as to the *amount of land,* not what it may be worth in dollars; and the only condition annexed to or governing the "amount of land" is as to its *location* geographically, whether in an incorporated town or in the country.

*Causa arguendo,* suppose, as is sometimes the case, a resident head of the family in this State should be too poor to build a dwelling upon his sole possession of 160 acres of land, which lay in equal portions on each side of a navigable river one mile wide, and that he with his family occupied by sufferance a house on his neighbor's land two miles away, but cultivated his own land, and with its products contributed to the support of his family, could it be reasonably maintained that in such a case this man's land could be forced to sale for his debts *non constat* our Constitution, simply because the land did not lay altogether in a single compact body, or because he was so circumstanced as not to live or reside upon it at once? Hardly would the plain mandatory terms of our Constitution bear so harsh a construction when, as it has been so humanely and tersely remarked by this honorable court (in Patterson vs. Taylor & Randell, 15 Fla., 346,) "all the courts are constrained to

Oliver v. Snowden—Argument of Counsel.

sustain the exemption laws upon grounds of public policy and humanity."

This court, according to our understanding of its meaning, in Loring vs. Wittich, 16 Fla., 509, seems to have construed our Constitution as only requiring that the party be "a resident of the *State*" and the "head of a family" in the following language: "When he asserts, therefore, that he came to this *State* over a year before, bringing with him his family, with the intention of making this (State) his permanent home, and that this *State* has, ever since he came into it, been his home, and with no intention of removing elsewhere; he alleges facts which show *prima facie* that he is *the head of a family residing in this State*, and unless it is shown that some of these material facts are not true, the case *required by the Constitution* to be made out by him is substantially shown." Any other construction of our Constitution would surely be imposing new and additional terms, conditions, restrictions and limitations upon the citizens' right to this humane provision incorporated into our Constitution when "gaunt famine, following close upon the heels of devastating war, smiled grimly o'er the land;" which right is there eliminated and declared in terms so simply clear that "he who runs might read and understand." And any other construction could only be arrived at by the subtleties, finely spun out, of a legally ingenious mind; when constitutional terms should be construed, in the language of Judge Story: "So that every word employed in the Constitution shall be expounded in its plain, obvious and common sense meaning. Constitutions are not designed for metaphysical or logical subtleties; for niceties of expression; for critical propriety; for elaborate shades of meaning; or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of life,

adapted to common wants, designed for common use, and fitted for common understandings. The people make them, · the people adopt them; the people must be supposed to read them with the help of common sense, and cannot be presumed to admit in them any recondite meaning, or any extraordinary gloss." Story on Const., §451.

And again: "The natural and obvious meaning should be taken without resorting to subtle and forced construction. Courts cannot correct *supposed* errors, omissions or defects. The office of interpretation is to bring a sense out of the words, and not to bring a sense into them. Though the spirit of a law may be referred to in order to interpret words admitting of two meanings, but never to extend a law to a case not ·within its written meanings." · Rube vs. Grffin, 14 N. Y., 244 ;. McCluskey vs. Cromwell, 11 N. Y., 593.

It is not and cannot be contended that our Legislature transcended their constitutional powers when they saw proper to enact the law which would seem to· set the questions forever at rest that are raised in this proceeding. By this law it is expressly enacted that a man may, at his option, or not, as he pleases, exempt the tract "his residence is on." And the same law further provides "that if the first tract does not contain 160 acres it shall be the duty of the officer to set apart the remainder from any other *tract* or *tracts* claimed by the debtor." Laws of Florida, 1873, Chap. 1944.

With this statute staring us in the face, and no question raised as to its entire constitutionality, how can it be reasonably questioned that the head of a family, residing in this State, has the right to have set apart to him as his homestead exemption 160 acres of land in the country, and that, too, whether it lays in one compact form or scattered into half a dozen parcels, and notwithstanding the fact that

he does not actually reside upon or have his dwelling-house upon the same.

*Thos. F. King* for Appellee.

The position of the complainant is that it makes no difference whether he has a place of abode on the land or not, or on a tract contiguous to it; that under the act of Assembly of 1873, p. 22, he can claim as a homestead any tract of land he owns, whether he has lived on it or not. We take it that this is not the meaning of the act. That act by its title is " to amend an act providing for setting apart a *homestead* and personal property to be exempted from forced sale under process of law." The act which this act amends, to-wit: the act of June 23, 1869, pp. 26 to 29, provides for setting apart the *homestead* allowed by the Constitution. To say that a man may have a homestead and still not reside on the land he claims as such is a contradiction in terms. The purpose of the Constitution is to provide a place of refuge for a man's family which shall not be taken for debt. If the place is not used as a place of abode for the family of the owner it is not a homestead. The act of 1873 is simply for the purpose of declaring that when the homestead is not in a town or city, but is a rural one, the head of the family may have for a homestead lands divided into different tracts or parcels, in all cases, though, to be contiguous. This provision of the act is to disembarass the courts in construing the Constitution regarding homesteads from the many conflicting decisions upon the point whether tracts of land not contiguous shall be subject to homestead or not. The court will observe in " Thompson on Homesteads " that the authorities are very conflicting on this point, some saying that the tracts must adjoin, others that the homestead may consist of tracts not adjoining. The act of 1873 settles this conflict. The

homestead may consist of different tracts if they touch each other. But while the act settles this point it does not otherwise affect the terms or purpose of the Constitution, which are that a man's place of abode shall be secure to his family from his creditors or from his extravagances or vices. The act of 1873 declares that where the *homestead* is not in a town or city, &c., so that the question arises here what is the *homestead* of the complainant?

We say that to constitute a homestead *there must be a place of abode upon the land in which the family of the homestead claimant resides.*

For the meaning of " homestead " as adjudicated we refer to the following sections in " Thompson on Homesteads " and the authorities there cited : Sections 100 and note 2, 102, 105, 106, 107, 110, 111, 128, *n*. 4.

The complainant in this case never lived on the land in question. Ever since he has been in Florida he and his family have resided in the town of Gainesville, an incorporated town, within the limits of which the land in question is not situated. But, says the complainant, " that is nothing. I, in the words of the Constitution, reside in Florida, and, being a resident of the State, I can homestead 160 acres of land anywhere in the State I choose, and for any purpose. I can live in Pensacola and all that is necessary for me to exempt my land in Alachua county from my debts is to file a list of them with the Judge of Probate of that county. I may not only not have lived in that county, or on any part of my lands, but I may never have seen them. I may have on one part of my different tracts ten acres of orange trees worth $25,000, on another tract I may have a cotton plantation of 100 acres, on another I may have a store and sell $100,000 of goods in the year. This is all my 160 acres, and I have declared to the Judge of Probate that it is my homestead, and that makes

it my homestead." This is not what our Constitution, or any other constitution, or any statute, means by " homestead." See Section 40 and cases cited in Thompson on Homesteads, and also the opinion of Justice Bradley in Greely vs. Scott, 2 Woods' R., 657, decided in 1875, construing the constitutional provision of Florida respecting homesteads. In the latter case it will be observed, the Judge holds that to exempt land from the creditor the person claiming homestead must live on it, and he must, if a farmer, use the whole of it for his farm purposes. If any part is used by a farmer for a mill, or any other purpose than that of farming, it is subject to levy and sale. The land must be wholly used and required for the occupation of the owner, and if any part is appropriated to any other use than his usual occupation, it is not homestead. A contrary view to this would not be to further the beneficent purpose of the Constitution, that is, to furnish a refuge to the wife and children, but would protect and encourage dishonesty by allowing the debtor to contract debts by holding out to the world that he owns lands and pursues occupations which make him responsible, and which have no connection with his home or his usual occupation in life.

The acts of 1873 and 1869 were made by their very terms to provide for the manner in which the " homestead " of the Constitution should be set apart for the use of the family. They both mention " homestead," and point out the means for effecting the object of the Constitution. They devise how a " homestead " may be provided for a family, and do not declare that 160 acres, or any smaller tract, wherever situated and for whatever purposes used, may not be taken for debt.

If the land in controversy can be exempted it must be as a rural homestead, and because of its use by the com-

plainant as a farm.   But the complainant is not a farmer.
He has not only not lived on the land, but his occupations are
to auctioneer and buy and sell land.   He hires men to raise
and ship vegetables and other produce raised on this land,
thus employing capital in a business other than his usual
occupation.   The case of Greely vs. Scott, as well as all
others, we think, show that the land must be employed for
the usual occupation of him claiming the homestead ex-
emption, and not as an incidental business in which he in-
vests his surplus capital.

THE CHIEF-JUSTICE delivered the opinion of the court.

The material question is whether a debtor and his family
residing in a town may claim a homestead in lands out of
town which are cultivated but not actually occupied by
them.

The word " homestead," as used in the Constitution and
statutes of California, is thus defined by the courts of that
State: " It represents the dwelling-house at which the
family resides, with the usual and customary appurtenances,
including out buildings of every kind necessary or con-
venient for family use, and lands used for the purposes
thereof.   If situated in the country it may include a garden
or farm.   If situated in a city or town it may include one
or more lots, or one or more blocks.   In either case it is
unlimited by extent merely.   It need not be in a compact
body ; on the contrary, it may be intersected by highways,
streets or alleys. * * The only tests are use and value. * *
Whatever is used being either necessary or convenient as
a place of residence for the family, as contradistinguished
from a place of business, constitutes the homestead, subject
to the statutory limit as to value."   Gregg vs. Bostwick,
33 Cal., 220, 227.

This extract shows the difference between the statutory

regulations as to the extent of the homestead in that State and in Florida. In this State the extent of the homestead is measured by quantity and not value. Our Constitution exempts from forced sale " a homestead to the extent of one hundred and sixty acres of land *or* the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State," &c.

Appellant has his domicile with his family in the town of Gainesville upon a lot, the title to which is to be made in the name of his wife " when paid-for;" and neither he nor his family have resided upon the lands lying several miles outside the town, which latter has been levied upon by the sheriff.

In Baker vs. The State, 17 Fla., 406, this court said that one who has owned and occupied with his family the limited amount of land and improvements mentioned has " enjoyed " it as exempt from forced sale, * * because the enjoyment of a homestead consists in the use and occupation of it with his family, according to the clear intent and purpose of the provision.

Thompson on Homestead Exemptions gives the following: " The homestead means the *home place*, the place where the home is, and such is its legal acceptation at the present day. It is the home—the house and the adjoining land where the head of the family dwells—the home farm." (36 N. H., 136.) " It is the land where is situated the dwelling of the owner and his family." (16 Wis., 638.) " A homestead necessarily includes the idea of a residence." (24 Texas, 224.) It must be the owner's place of residence, the place where he lives. (23 Texas, 502 ; 10 Minn., 156 ; 5 Minn., 333 ; 7 Minn., 518 ; 42 Texas, 443.) It must appear that the lands were actually used, or manifestly intended to be used, as a part of the home of the family. 21 Wall., 486, Waite, C. J.

Our Constitution, speaking of a *homestead* and failing to define the word, leaves its definition to the ordinary rule of construction, which is that it is to be taken and applied according to the common and popular apprehension of its meaning, which is clearly given in the foregoing citations. It is scarcely possible that it can be misunderstood.

By our Constitution it may extend to one half acre and its " improvements " and appurtenances in a town or city, including the dwelling-house and place of business. (Whether this may · consist of two or more separated or non-contiguous parts is not in question here.) Or it may extend to 160 acres of land and improvements not in a town or city. It cannot be more than either of these quantities. If the homestead, the place of residence of the debtor and his family, is in the town or city, the claim of exemption of rural lands cannot be allowed. It is only the " place of the home " of the debtor and family that can be exempt from sale for debts.

In this case the homestead is not upon the lands levied upon, or any part of them. Nor does the selection and the recording of the designation of a " homestead " under the law of 1869 make it a homestead in fact, so as to exempt the property from sale, without actual occupancy as a residence, or, perhaps, where it is " manifestly intended " to be used as the home of the family, as was said by the Chief-Justice in 21 Wall., 486, the manifest intention being shown by proof of preparations made to occupy it immediately as a home.

The case of Loring vs. Wittich, referred to by appellant's counsel, treated only of the exemption of personal property, and had no reference to the homestead.

Whether two separate portions of land, outside of a city or town, may be traeted as a homestead, the residence being upon one of them and the other used as a part of the

same farm, is not here involed. But the home of the debtor and his family being in the town, the exemption of real property out of town cannot be sustained under the Constitution of this State.

The decree is affirmed.