J. MORTIMER MURPHY AND JANE S. MURPHY, APPELLANTS, vs. ARTHUR A. FARQUHAR AND HARRIET S. FARQUHAR, HIS WIFE, APPELLEES.

HOMESTEAD—ABANDONMENT OF SUBJECTS IT TO LIENS OF JUDGMENTS.

1. Under the homestead provisions of the Constitution of Florida an attempted transfer of the legal title by the husband to his wife of his homestead does not and can not give to any judgment against him any other, further or greater lien or right in or to such homestead than it had before such attempted transfer of the legal title was made, if the right to the exemption of the homestead has not otherwise been forfeited. If the ex-

empted property continues in good faith to be the *homestead* or place of actual permanent abode of the husband and his family, without any permanent abandonment thereof, then his judgment creditors have no such lien upon or interest therein as will give them a right to question the validity of an attempted transfer of the legal title thereto by the husband to the wife.

2. While the law is well settled that a *temporary* absence in search of health or pleasure, or on another place for purposes of business, will not deprive the homestead claimant of his right, unless it be apparent that there was a design of *permanent abandonment;* yet it is equally well settled that a *permanent abandonment* of the homestead as a *bona fide* home and place of permanent abode strips it of its homestead character, and deprives the claimant of the right to exempt it from sale for his debts.

Appeal from the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*Macfarlane and Pettingill*, for Appellants.

*G. A. Hanson*, for Appellees.

TAYLOR, C. J.:

The appellees, Arthur A. Farquhar and Harriet S., his wife, filed their bill in equity on April 16th, 1891, in the Circuit Court of Hillsborough county against the appellants, J. Mortimer Murphy and Jane S. Murphy, his wife, alleging in substance, that they were the owners of lot five (5) of section two (2) in township twenty-seven (27) south, in range fifteen (15) east, in the county of Hillsborough Florida, containing less than one hundred acres. That they were in actual possession and occupancy thereof, making it their

home and place of permanent abode. That the same was vested in the said Arthur A. by title in fee, but on the 28th day of January; 1883, he made a deed of conveyance of the same to his said wife, Harriet S., the same having been set apart and dedicated by them as a homestead for themselves and their heirs under the Constitution and laws of Florida prior to the making of said deed. That they are advised that said deed is not in accordance with law and is of no legal force, but be that as it may show that said land was set apart and declared to be the homestead of orators by an instrument in writing filed for record with the county judge of said county, and that while they are advised that such filing and record of their claim of homestead in said land was not necessary under the Constitution of 1885, yet they made the same in good faith out of abundant caution, the same being then their only home and place of residence. That on the 31st day of March, 1887, one W. G. Farquhar, who was then alive ob· tained a judgment in the Circuit Court of Hillsborough county for the sum of $1,500 against him, the said Arthur A., and one E. L. Tessier. That said judgment was not for the purchase money of said land, nor for any labor or material furnished for its improvement, nor on any account that could create a special lien under the laws. That notwithstanding their homestead rights in said land, and against their protests, the sheriff of said county levied upon said homestead under such judgment and sold it thereunto the said W. G. Farquhar on July 4, 1887, and executed a deed to him therefor. That about the 4th of November, 1887, the said W. G. Farquhar died intestate, and that on the 7th of November, 1888, the de-

JANUARY TERM, 1897. 353

Murphy and Murphy v. Farquhar and Farquhar.—Opinion of Court.

fendant Jane S. Murphy applied for and obtained from the county judge of said county letters of administration on his estate. The bill questions the legality of this grant of administration to Jane S. Murphy on the ground of her coverture and inability to give bond as administrator without her husband being joined in the administration with her. That the said Jane S. Murphy, as such administratrix, applied to the county court of said county for, and obtained, an order for the sale of said lot of land as being the property of said estate of W. G. Farquhar, deceased. That a commissioner was appointed and ordered to sell said land by the county court on her application as administratrix. That said commissioner sold the same against their protests made at the sale, and the same was bid off at said commissioners sale by the defendant J. Mortimer Murphy, to whom the said commissioner has made a deed for the same. That said acts and doings cloud their title to said homestead, and that, though they are still in the possession and occupancy of their said homestead, they might by accident be deprived of the evidence necessary to establish their rights therein, and that delay in removing said clouds on their tile may work irreparable injury. The prayers of the bill are that said levy and sale by the sheriff under said judgment, and the deed made by him to W. G. Farquhar, may be adjudged to be wholly null and void, and set aside and cancelled, and that said proceedings in the county court by Jane S. Murphy, as administratrix of W. G. Farquhar, for the sale thereof, and the deed made by the commissioner in pursuance thereof, may be likewise adjudged to be null and void and set aside and cancelled as be-

23

ing illegal clouds on their title to said land, and that the homestead rights of orators in said land may be declared, upheld and protected. The bill contains also the usual prayers for subpœna and general relief.

The defendant demurred to the bill upon the grounds: 1st. Because said bill is vague, uncertain and contradictory, in that it alleges, first, that both of the complainants are the owners of the land therein described, while it is subsequently shown therein that it is not owned by both of them. 2d. Because it is shown by said bill that the complainant, Arthur A. Farquhar, by his deed to the complainant, Harriet S. Farquhar, attempted to convey said land, and is, therefore, estopped to claim the same as his homestead, while the complainant, Harriet S. Farquhar, can not set up a claim of homestead under the Constitution and laws of Florida. 3d. Because the allegations of said bill show the conveyance of said land by Arthur A. to Harriet S. to be void, and the complainant, Arthur A. Farquhar, being estopped to claim a homestead in same, the levy under the judgment of W. G. Farquhar was a valid lien upon said property, and said sale thereunder divested the title of the complainants. The other grounds of the demurrer need not be stated. This demurrer was overruled, and the defendants answered the bill, in substance, as follows: They deny that the complainants are the owners of the land as alleged, but allege that the levy upon and sale thereof under the judgment in favor of W. G. Farquhar was in all respects valid and legal, and that since the conveyance thereof by the sheriff, pursuant to said sale, neither of the complainants have been the owners thereof, nor had any title whatever to the same. They

deny that the complainants or either of them are in actual or legal possession of said land or any part thereof, or that they were so in possession at the time of the filing of their bill. They admit that A. A. Farquhar on or about. January 28, 1883, made a conveyance of said land directly to his wife, Harriet S., but allege that said deed was void and of no legal force, as admitted in said bill. They deny that the complainants had set apart and dedicated said land as their homestead prior to the execution of such deed from Arthur A. to Harriet S. The levy and sale by the sheriff under the judgment in favor of W. G. Farquhar, and the making of the deed by the sheriff to W. G. Farquhar pursuant to said sale, is admitted. They deny that at the time the complainants filed the paper declaring said land to be their homestead that they were occupying said property in good faith as their permanent home and place of abode. They admit the death of W. G. Farquhar, intestate, and the administration on his estate by Jane S. Murphy, and deny that she is not in all respects the legally constituted administratrix of the estate of said W. G. Farquhar. They admit the sale of the said land by a commissioner by order of the County Court on the application of Jane S. Murphy, as administratrix, and the purchase thereof at said commissioner's sale by the defendant, J. Mortimer Murphy. Replication to this answer was filed and the cause referred to a master to take testimony.

A voluminous amount of testimony was taken and reported to the court, chiefly directed to the issue as to whether the complainants had continuously resided upon the land as their *bona fide* home and place of permanent abode, or whether they had abandoned their residence upon it, and made their actual home

and residence elsewhere.  Final hearing was had upon the pleadings and evidence reported, resulting in a final decree in favor of the complainants, in conformity to the prayers of their bill, by which the sale and conveyance of said property by the sheriff under the judgment in favor of W. G. Farquhar, and the sale and conveyance thereof by the commissioner under the order of the County Court on the application of Jane S. Murphy, as administratrix of W. G. Farquhar, deceased, were adjudged to be wholly null and void, and decreed to be cancelled, and the property adjudged to be the homestead of the complainants.  From this decree the defendants below have appealed and allege as error:  1st. The overruling of their demurrer to the bill of complaint.  2d. The granting of the final decree in the cause upon the ground that it is not supported by the evidence submitted.

There is no merit in the defendants' demurrer to the bill.  The complainants plant themselves in their bill solely upon their homestead rights in and to the land in controversy.  Whether the deed of conveyance made in 1883 by the husband, Arthur A., directly to his wife, Harriet S., was, or was not, void and effectual in law, to carry to her the legal title to said land, because of the supposed inability of a husband to convey real estate by deed directly to his wife, can make no material difference under the circumstances of this case, if it be true in fact that the land in dispute is and has been all along the *bona fide* homestead and place of actual and permanent residence of the complainants, and there has been no abandonment thereof by them as their home and place of permanent abode. If it has thus been continuously their home and place of residence, in good faith and without any permanent

abandonment, it can make no difference whatever with any rights that the defendants are shown to have under the judgment in favor of W. G. Farquhar, against Arthur A. Farquhar, whether said deed from Arthur A. to his wife be valid or void, since, under our Constitution, said judgment not being for the purchase money of said land, nor for house, field or other labor performed on the same, does not bind the homestead as a lien, and the judgment creditor has no such interest or concern therein as will give him the right to question in any way the *bona fides* or validity of any transfers of the *legal title* thereto as between those who, under the Constitution, are entitled to the unmolested occupancy and possession thereof. If the deed from Arthur A. to Harriet S. was void and ineffectual to transfer the *legal title*, then such legal title still remains in Arthur A., and, so far as his right to occupy and enjoy said homestead, free of the liens of all unexcepted judgments, or of any sale or molestation thereunder, is concerned, his *attempted* transfer of the legal title to his wife can make no difference whatever. Such attempted transfer of the legal title to the husband's homestead does not and can not give to any unexcepted judgment against him any other, further or greater lien or right in or to such homestead than it had before such attempt had been made, if the right to the exemption has not otherwise been forfeited. Ruohs vs. Hooke, 3 Lea (Tenn.) 302, S. C. 31 Am. Rep. 642; Leupold vs. Krause, 95 Ill. 440; Boyd vs. Barnett, 24 Ill. App. 199. There are cases holding that as such exemptions of the homestead are for the benefit of the family, the homestead character that the property possessed while owned by the husband is not divested by a conveyance of the legal title from the

husband to the wife, where they still continue thereon. Green vs. Farrer & Wheeler, 53 Iowa, 426; Kruger vs. Le Blanc, 75 Mich. 424, 42 N. W. Rep. 853; Burkett vs. Burkett, 78 Cal. 310, 20 Pac. Rep. 715; McMahon vs. Speilman, 15 Neb. 653, 20 N. W. Rep. 10; Mc-Hugh vs. Smiley, 17 Neb. 626, 24 N. W. Rep. 277. Though Harriet S. Farquhar may not have been a *nec-essary* party to the bill in this case, yet under the circumstances disclosed, we do not think that her joinder therein with her husband as a party complainant was so improper as to render the bill subject to demurrer on that ground.

The propriety of the decree appealed from is further assailed upon the ground that it is contrary to the evidence. That the preponderance of the evidence establishing such an abandonment by the complainants of the premises in dispute as a homestead and place of permanent abode, prior to the sale thereof under the judgment against Arthur A. Farquhar, as to have effected a forfeiture of their homestead rights therein. The record before us exhibits the following evidence: The land in dispute was conveyed by its former owner to Arthur A. Farquhar on July 25th, 1882. From an allegation in the bill it appears that he attempted to convey it by deed to his wife Harriet S. Farquhar on the 28th of January, 1883, but the bill practically admits that said conveyance was of no legal force or effect to convey title. From some time in 1883 until November or December, 1886, the complainants resided upon the property in a dwelling-house located thereon, making it their home and sole place of abode. In November or December, 1886, Mrs. Farquhar opened a grocery store in the village of Tarpon Springs, located about two and a half miles

from the property in dispute.  The building in which she conducted this grocery business, which appears to have been owned by her separately, was a structure of two stories, with the store on the ground floor, and the upper story divided into several living rooms, with some residence space also on the lower floor.  They ceased the grocery business in Tarpon Springs in November, 1891, and then moved back to the property in dispute and have continuously resided thereon ever since.  When Mrs. Farquhar went into the grocery business in Tarpon Springs in November, 1886, Arthur A. Farquhar went with her, as he says, to clerk for her in the store.  They removed the greater part, if not all, of their furniture from the house on the place in controvery into the house at Tarpon Springs, occupying the rooms over the store as a dwelling. They also took boarders to live with them in the house at Tarpon Springs, and by far the greater portion of their time was spent in Tarpon Springs between November, 1886, and November, 1891.  During this period Arthur A. Farquhar, sometimes accompanied by his wife, would go frequently—almost every Saturday—to the place in dispute, remaining there until Monday morning; on which visits he carried his food with him from Tarpon Springs.  The proof is conflicting as to the number of times that he made these visits to the place during this period, and as to the length of time that he remained there on such visits, and as to what he did there while on such visits; but the weight of the evidence shows that they were of about the same frequency and character as any one would ordinarily make for the purpose simply of looking after a like piece of property that he owned that was located so near as this was to his place of residence in Tarpon

Springs. During the period between November, 1886, and November, 1891, they regularly kept house in Tarpon Springs, doing their cooking, eating and sleeping there in the building owned by the wife that was fitted up and furnished as a home, also taking boarders to live with them there; while the place in dispute, during all that period was practically dismantled and deserted. On February 12th, 1887, the registered voters of the community of Tarpon Springs held a public meeting in compliance with the statute, to incorporate the town of Tarpon Springs, and did so incorporate it, electing a board of aldermen, mayor and other officers. Arthur A. Farquhar took part in this meeting as a registered voter within the territory incorporated, which territory did not embrace the property in dispute. He registered as a voter in the town, taking and subscribing the prescribed oath for such registration, and voted at subsequent town elections until 1891, and exercised the office, part of the time, of town marshal for said town. On July 4th, 1887, the property was sold by the sheriff of Hillsborough county under a judgment and execution of the Circuit Court of Hillsborough county, in favor of William G. Farquhar, against Arthur A. Farquhar, and on that date was conveyed by said sheriff to the judgment creditor, William G. Farquhar, who purchased the same at said sale.

Under the proofs submitted the decree rendered was erroneous. While the law is well settled that a *temporary* absence in search of health or pleasure, or on another place for purposes of business, will not deprive the homestead claimant of his right, unless it be apparent that there was a design of *permanent abandonment* (Tumlinson vs. Swinney, 22 Ark. 400, S. C. 76

Am. Dec. 432; Walters vs. People, 18 Ill. 194, S. C. 65 Am. Dec. 730; Notes and cases cited in Taylor vs. Hargous, 60 Am. Dec. 607 *et seq.;* Fyffe vs. Beers, 18 Iowa, 4, S. C. 85 Am. Dec. 577; Franklin vs. Coffee, 18 Texas, 413, S. C. 70 Am. Dec, 292; Kenley vs. Hudelson, 99 Ill. 493), yet it is equally well settled that a *permanent abandonment* of the homestead as a *bona fide* home and place of permanent abode strips it of its homestead character, and deprives the claimant of the right to exempt it from sale for his debts.    Atchison Savings Bank vs. Wheeler's Admr., 20 Kansas, 625; Ross vs. Hellyer, 26 Fed. Rep. 413; Cotton vs. Hamil & Co., 58 Iowa, 594, 12 N. W. Rep. 607; Titman vs. Moore, 43 Ill. 169; Carter, Fisher & Co. vs. Goodman, 11 Bush, 228; Lehman, Durr & Co. vs. Bryan, 67 Ala. 558; Cabeen vs. Mulligan, 37 Ill. 230, S. C. 87 Am. Dec. 247; Smith vs. Bunn, 75 Mo. 559; Jarvais vs. Moe, 38 Wis. 440.    It has been settled in this State that the "homestead" intended by our Constitution to be exempted is the place of actual residence of the party and his family; and that land not actually occupied as a home and residence is not exempt from debts thereby.    Oliver vs. Snowden, 18 Fla. 823, S. C. 43 Am. Rep. 338.    Were it not for two facts that are established in this case without contradiction, we should feel constrained to uphold the decree rendered.    Those facts are, first, the attempted transfer of the legal title to the premises by Arthur A. Farquhar to his wife prior to their removal into the town of Tarpon Springs; second, his taking part as a registered voter of the town of Tarpon Springs in the proceedings for its incorporation, and his subsequent participation as a voter of such town in its town elections during the time that he and his wife resided and kept house over

their store in such town. Taking these undisputed facts in connection with the other proofs in the case, showing that his visits to the place, after his removal to the town, were of a desultory character, we think that such an abandonment of the premises, prior to the levy upon and sale thereof under the judgment against him, is established as stripped it of its homestead character, and divested him of the right to exempt it, and made it subject to the lien of judgments against him. The attempted transfer of the legal title to his wife, prior to the removal to the town, gives to the transaction the appearance of preconceived preparation upon his part for such removal and abandonment by substituting the attempted separate ownership of the property by his wife, as a bulwark against the claims of his creditors in lieu of the constitutional shield of his homestead right therein that he knew would become forfeited upon his contemplated abandonment. His voting in the town of Tarpon Springs, coupled with the other facts of his residence there, establishes a change of his residence to that town.

The decree of the court below is reversed with directions to enter a decree dismissing the complainants' bill.