JESSE B. MATTHEWS, *Appellant,* v. ALMA JEACLE AND HUSBAND, WILLIAM JEACLE, *Appellees.*

1. Land cannot be decreed and partitioned as the homestead of a person who conveyed the same away in 1861, and died in 1867, before the adoption of the homestead Article of the Constitution of 1868.

2. Where all the children in a family have arrived at their majority, upon the dissolution of the family by the permanent removal of its members, and the father dies leaving the mother as the sole remaining member of the former family, such mother, under these circumstances, ceases to be the head of the family within the contemplation of our constitution, her former homestead loses its status as a homestead, and she may, unless otherwise incapacitated, devise the same by her last will.

3. The homestead intended by our constitution to be exempted is the place of actual residence of the party and his family, and though a temporary absence will not deprive the claimant of his right, unless it appear that there was a design of permanent abandonment, yet a permanent abandonment of the homestead as a bona fide home and place of permanent abode strips it of its homestead character.

4. The onus is upon the complainants to show clearly that the property claimed to be a homestead is in law and fact a homestead, and it behooves them to allege each fact clearly and definitely that is necessary to make out their case.

This case was decided by Division B.

Appeal from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*D. C. Campbell,* for Appellant;

*Young & Adams,* for Appellees.

PARKHILL, J.—The appellant filed in the Circuit Court her bill for partition of a certain lot in the city of Jacksonville known as lot one (1) in block forty-three (43). A demurrer to the bill was sustained and the complainant appeals.

The bill alleges that said complainant and the defendants are the sole surviving heirs at law of Joseph C. Brown, deceased, and his wife Tabitha Brown, also deceased.

The bill prays, first, that lot one, block forty-three be decreed to be the homestead of Joseph C. Brown, and partitioned as such. We fail to see how this lot became the homestead of Joseph C. Brown, for the bill alleges that while Brown owned and occupied for a time the property in question, yet in 1861, while temporarily residing in Baker county, Florida, he conveyed the said property to one Williams in trust, and then departed from the State, and did not return until the war between the States was over. In the meantime, the said Williams, as

the bill alleges, delivered and transferred this property to the said Tabitha Brown to her own use. Returning to Florida in 1865, the said Joseph C. Brown, with his said wife and children, resumed and continued his residence upon the said lot, where he died about the early Spring of 1867.

It is perfectly apparent that this lot cannot be decreed to be and partitioned as the homestead of Joseph C. Brown, who conveyed the same away in 1861, and died in 1867, before the adoption of the homestead Article of the Constitution of 1868.

The bill further prays that, if the court should determine that said lot one was not the homestead of said Brown, the west half of said lot one be partitioned as the homestead of Mrs. Brown.

It seems, from the allegations of the bill, that after Joseph C. Brown died in 1867, "his widow, Tabitha Brown and their children continued their residence, home and place of permanent abode upon said lot one, until about the year 1869 or 1870, when his said widow and their children temporarily moved to Baker county, Florida, where his said widow, Tabitha Brown, was married to William Sedgwick, and shortly after her said last marriage she and her said former husband's children returned and resumed their residence, home and place of permanent abode upon said lot until about the year A. D. 1877, when she moved away from said lot for the purpose of renting or letting the same, and deriving an income therefrom. After she had let and rented said property she and her said last named husband occupied other residences until after his death, when she resided in a small cottage at a nominal rental cost, and continued renting or letting said lot 1, in Block 43, aforesaid, for a much higher and greater rental than she paid for the small cottage in

which she resided, and she continued to enjoy the income from said lot 1 in Block 43 aforesaid."

On the 14th of November, 1903, Tabitha Brown Sedgwick, being a widow again, conveyed the east half of said lot one in Block 43 to her daughter Alma Brown, who had married William Jeacle. Tabitha Brown Sedgwick died August 13th, 1905, attempting to devise by her last will the west half of said lot one to Alma Brown Jeacle, who has continuously since enjoyed the rental therefrom. The complainant contends that the will of said Tabitha Brown Sedgwick, devising the west half of said lot one to Alma Jeacle is void, and asks partition of said lot.

The bill shows that of the union of Joseph C. Brown and Tabitha Brown there were born the following named children: George W. Brown, born May 31st, 1852, died May 13, 1887; Samuel J. Brown, born March, 1857, died May 10th, 1902; Alma Brown, born about the year 1866, married William Jeacle. As a result of the marriage of Tabitha Brown and William Sedgwick there was born about June, 1871, a daughter, Mary, who afterwards married Heyward Harris, both of whom are residing in Richmond, Virginia.

The bill fails to show that the west half of lot 1 was the homestead of Tabitha Brown Sedgwick so that she could not devise the same by will.

From the allegations of the bill we think we may safely conclude that when Tabitha Brown died her youngest child was thirty-four years old. At that time all her children had grown up and moved away from their mother and her socalled homestead. Indeed, Tabitha Brown Sedgwick moved away from the *locus in quo* in the year 1877, renting out the same. "After she had let and rented said property, she and her said last named hus-

band occupied other residences until after his death, when she resided in a small cottage at a nominal rental cost, and continued renting or letting said lot 1 in Block 43, aforesaid, for a much higher and greater rental than she paid for the small cottage in which she resided, and she continued to enjoy the income from said lot 1 in Block 43, aforesaid." Under these circumstances we think the said lot of ground ceased to be the homestead of Tabitha Brown Sedgwick, and she had a right to devise the same by her last will and testament.

Only that homestead "owned by the head of a family residing in this State" is protected by Section 1 of Article X of the Constitution of 1885. While some authorities hold that one who has acquired a homestead does not lose his right to the exemption so long as he continues to use the property as his home, although because of death or removal the family is broken up (Palmer v. Sawyer, 74 Neb. 108, 103 N. W. Rep. 1088, 12 Ann. Cas. 715), yet this court is clearly committed to the doctrine that, where all the children in a family have arrived at their majority, upon the dissolution of the family by the permanent removal of its members, and the father dies leaving the mother as the sole remaining member of the former family, such mother, under these circumstances, ceases to be the head of a family within the contemplation of our constitution, her former homestead loses its status as a homestead, and she may, unless otherwise incapacitated, devise the same by her last will. Herrin v. Brown, 44 Fla. 782, 33 South. Rep. 522, 103 Am. St. Rep. 182.

In Hill v. Franklin, 54 Miss. 634, the court said: "For the benefit of the family, the law exempts the home of the family from the burden which rests upon all other property of being appropriated to the debts of the owner. This immunity depends upon two contingencies: first, oc-

cupancy as a home; second, that the owner shall have a family. When either ceases, the exemption is at an end. There can be no more reason for holding that a man who has lost his family shall continue to preserve an exempt homestead, because he once had a family, than for saying that which has once been exempt while occupied as a homestead shall continue to be exempt although totally abandoned as a residence. It is as illogical to say that the exemption shall continue after the family has ceased as to say that it can exist before the family comes into existence. It will not be pretended that a man could claim a homestead exemption upon the ground that he intended to have a family. How can it be said, with more reason, that he is entitled to one because he formerly had a family?"

It has been settled in this State that the "homestead" intended by our constitution to be exempted is the place of actual residence of the party and his family (Oliver v. Snowden, 18 Fla. 823, 43 Am. Rep. 338; Murphy v. Farquhar, 39 Fla. 350, 22 South. Rep. 681) ; and though a temporary absence will not deprive the homestead of his right, unless it appear that there was a design of permanent abandonment, yet a permanent abandonment of the homestead as a bona fide home and place of permanent abode strips it of its homestead character. Murphy v. Farquhar, *supra,* and cases cited.

From a fair construction of the language of the bill, we think Tabitha Brown Sedgwick abandoned the property in question as her residence, home and place of permanent abode in 1877, when, as the bill alleges, she moved away from said lot for the purpose of renting or letting the same, and deriving an income therefrom.

As we said in Herrin v. Brown, *supra,* the complainants were in a position where the onus was on them to

show clearly, if they could, that the property claimed to be a homestead was in law and in fact a homestead, and it behooved them to allege every fact clearly and definitely that was necessary to make out their case, but having failed to do so, the demurrer to their bill was properly sustained.

Affirmed.

TAYLOR and HOCKER, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and PARKHILL, J. J., concur in the opinion.